FRANCAVILLA ET AL., PLAINTIFFS AND APPELLANTS, *v.* ORLANDO, DEFENDANT AND APPELLEE.

APPEAL from the District Court of Ponce in an Action of Revendication.

No. 3343.—Decided January 30, 1925.

REVENDICATION—EVIDENCE OF TITLE.—The fact that the estate of the defendant's mother was partitioned and the property sued for was allotted to the defendant is no proof of a title in his favor when there is no evidence that the plaintiff's ancestor conveyed the property to the defendant's mother.

ID.—PROFITS—BAD FAITH—DEFECTS OF TITLE.—When possession is acquired contrary to law, as when a person takes possession of property in which minors are interested without authorization of court, the bad faith of the possessor is presumed unless his possession, is by inheritance, in which case the bad faith in connection with the recovery of profits is rather a question of fact and it is necessary to prove that the heir had knowledge of the defects that made his title void.

The facts are stated in the opinion.

*Messrs. Martínez Nadal, Tormes & Colón* for the appellants.

*Mr. L. Torres Grau* for the appellee.

MR. JUSTICE FRANCO SOTO delivered the opinion of the court.

This is an action to recover a certain urban property and mesne profits.

The court below rendered judgment sustaining the complaint as to recovery of the property, but denied recovery of the rents received by the defendant during his possession and did not impose upon him the costs. The appeal taken by the plaintiff refers to the last two matters assigned as error and argued in their brief.

The appellants are entirely correct. The evidence on which the trial court sustained recovery of the property justified recovery of the profits and costs.

From the evidence it appears that the house sued for was built by Rafael Volpe, the ancestor of the plaintiffs, on a lot granted to him by the municipality of Yauco. He was a mason who supported himself by his trade, and after he had finished the house and lived in it for a short time with his wife and minor children, the plaintiffs, he suddenly died. It also appears that after the death of Rafael Volpe several debts remained pending as a result of the building of the house amounting to $100 and were paid by the defendant. It appears likewise that upon the death of her husband the plaintiff intended to return to her native country, Italy, for which she received from her aunt, Ana María Francavilla, the defendant's mother, the sum of $125. This voyage was not made because of difficulties arising as a result of the great war, but the plaintiff testified that it was the intention of her aunt and the defendant to furnish the expenses of her trip in exchange for the house in controversy. The evidence also tended to show that since 1916 the defendant had possession of the property, collected for himself the rent of from $5 to $8 a month and paid the taxes.

The defendant offered evidence tending to show that although the plaintiff's ancestor commenced the construction of the house, later the mother of the defendant took charge of it because the said ancestor had no more money. However, this evidence has no reasonable explanation in the light of the pending debts originated in the building of the house and contracted directly by the ancestor and afterwards paid by the defendant, who collected interest, on the money from the plaintiffs. It was not shown by any kind of evidence that Rafael Volpe conveyed to Ana María Francavilla the ownership of the house. It is of no importance that the defendant offered in evidence the

partition of the estate of his mother, Ana María Franca-
villa, wherein the property was allotted to the said defend-
ant. In the absence of evidence to show the acquisition of
the house by the defendant's mother the partition had no
more weight than the testimony of the defendant and one
of his witnesses, who were not believed by the trial court and
who said that Ana María Francavilla took charge of finish-
ing the house because Rafael Volpe did not have sufficient
money.

It is to be observed that the defendant-appellee does not
complain of the conclusions reached by the court for ad-
judging recovery of the property and only contends in his
brief that his possession was in good faith and he was not
bound to return the rents not received by the plaintiffs or
to pay the costs.

Therefore it has been necessary to review the evidence
in order to decide the issue as to the profits, inasmuch as
this seemed to be a question inherent to the merits of the
main action.

If the evidence showed that the urban property belonged
to Rafael Volpe and it did not appear that he conveyed
his title of ownership to Ana María Francavilla, the mother
of the defendant, it is clear that the defendant had no title
to the said property. Nor could the defendant, as a ques-
tion of law, be protected under the presumption of good
faith because of the mere fact that he paid certain debts
which Rafael Volpe left unpaid at the time of his death
and which originated in the building of the house. As
there were minors, neither the defendant nor his ancestor
could claim the property without complying with the for-
malities prescribed by Act No. 33 of March 9, 1911, amend-
ing sections 229, 282 and 284 of the Civil Code. The pro-
hibition is statutory. Therefore, direct evidence is not nec-
essary to establish the bad faith of the possessor, as it is
one of the cases in which bad faith is inherent to the very
abnormal condition of the possession due to non-compliance

with the law, and as a matter of law the presumption of bad faith would rather seem to obtain. Scaevola, following Laurent's view, says that article 434 of the Spanish Civil Code, equivalent to section 437 of our Civil Code, refers to cases where good faith depends upon the opinion of the judge, not to a case where bad faith is manifest because of a violation of the law. The said section of our Civil Code reads as follows:

"Sec. 437.—Good faith is always presumed, and any person averring bad faith on the part of a possessor, is bound to prove the same."

Manresa (volume 4, page 106) is of the same opinion in commenting on article 434 of the Spanish Civil Code and says that where a plaintiff, besides asserting his right, prays for a finding of bad faith, he should prove it, but at the same time maintains that if the invalidity involves inexcusable ignorance of the law, a presumption contrary to that of section 434 is established.

The judgment of the Supreme Court of Spain of March 14, 1867, holds that "The rule of law that bad faith is not presumed is not violated when the law considers that such bad faith exists because of action or omission contrary to law."

Finally the case of *Longpré* v. *Díaz*, 237 U. S. 512, which is the highest expression of the doctrine discussed, cites with approval the comments of Scaevola and the Spanish jurisprudence on this point. It is to be noted, however, that a distinction is drawn between the nature of the possession of the author and that which, after his death, passes to his heirs or successors. From this aspect application is made of section 444 of the revised Civil Code, equivalent to article 442 of the Spanish Civil Code, the deduction being that whatever the defect invalidating a title or whatever the inexcusable omission to comply with the law which makes it void, if the possessor succeeds by

inheritance the question of bad faith in connection with the recovery of profits is rather one of fact and must be proved, the claimant showing that the heir had knowledge of the defects that rendered his title void.

In this case it is true that the defendant pleads his character as an heir, but the evidence as a whole shows clearly the knowledge of the defendant, not of the defects in his title, but rather of the total absence of title for the reason that Rafael Volpe did not convey to Ana María Francavilla, the defendant's ancestor, his ownership title by any of the means of conveyance.

Going into the merits of the evidence as to the profits claimed, it may be deduced that the average monthly rent of the house was $6 and that the defendant received it during seven years. The total amount of the profits, therefore, is $504. From this must be deducted, as is done by the plaintiff without opposition from the defendant, the taxes and expenses of repairs which may be estimated at $16 a year. After such deduction a net balance of $392 is left. This is the amount that the defendant should pay to the plaintiff-appellants as the profits claimed in the complaint. Likewise, the nature of the case makes manifest the temerity of the defendant and he should pay the costs.

Perhaps it is not superfluous to say that the amounts owing to the defendant by the ancestor of the plaintiffs, or the debts contracted by his widow, are not at issue in this case and need not be considered.

For the foregoing reasons the judgment of the court below must be reversed in so far as it denied the recovery of the profits and substituted by another adjudging that the defendant pay to the plaintiffs the sum of $392 as the net amount of the profits received by the said defendant, together with the costs.

*Reversed.*

Chief Justice Del Toro and Justices Wolf, Aldrey and Hutchison concurred.